**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| InfuCare Rx, Inc., InfuCare RX LLC, DM Clinical Collaborations, HomeCare Rx, Inc., Factor One Source Pharmacy LLC, Fast Access Specialty Therapeutics, LLC, | ) | Case No. 4:26-cv-1496 |
| Plaintiffs, | ) | **Complaint and Jury Demand** |
| v. | ) | |
| Express Scripts, Inc., | ) | |
| Defendant. | ) | |

## COMPLAINT AND JURY DEMAND

COME NOW PLAINTIFFS InfuCare Rx, Inc., InfuCare RX LLC, DM Clinical Collaborations, HomeCare Rx, Inc., Factor One Source Pharmacy LLC, Fast Access Specialty Therapeutics, LLC ("Plaintiffs" and state as follows for their Complaint against DEFENDANT Express Scripts, Inc.:

## INTRODUCTION

1. Plaintiffs are a family of independent specialty infusion pharmacies that serve patients with complex, chronic, and often life-threatening conditions, delivering high-cost biologic and infusion therapies that require specialized clinical expertise, cold-chain logistics, and ongoing patient coordination. For years, Plaintiffs have dispensed these critical medications to ESI plan members under binding contracts that entitle Plaintiffs to commercially reasonable reimbursement. ESI has violated those contracts by reimbursing Plaintiffs at amounts below the contracted rates and in many instances below the cost that Plaintiffs incur. This is an action for breach of contract, breach of the implied covenant of good faith and fair dealing, and related

claims arising from ESI's sustained, systematic practice of reimbursing Plaintiffs at rates that fall below Plaintiffs' actual wholesale acquisition costs, forcing Plaintiffs to dispense life-sustaining medications at a loss.

2. ESI is one of the three largest pharmacy benefit managers ("PBMs") in the United States. It controls the pricing benchmarks, adjudication systems, and reimbursement methodologies that determine what participating pharmacies are paid, and pharmacies like Plaintiffs have little ability to audit or challenge those inputs in real time. ESI has weaponized that control to systematically deprive Plaintiffs of the commercially reasonable reimbursement to which they are contractually entitled.

3. ESI's below-cost reimbursement has imposed cumulative documented net losses of $9,385,163 on Plaintiffs from 2023 through 2025 alone, with losses accelerating sharply in 2026. When Plaintiffs formally raised these losses with ESI in early 2026, ESI's substantive response was that nothing could be done because the affected specialty medications could instead be dispensed through Accredo, ESI's vertically owned specialty pharmacy and Plaintiffs' direct competitor. That is not a business justification, but instead is an admission that ESI is deliberately using its ownership of a competing pharmacy as the rationale for denying fair reimbursement to independent competitors it has contracted to serve.

4. ESI's conduct violates the express terms of the governing Provider Agreements, the implied covenant of good faith and fair dealing, and applicable law. Plaintiffs bring this action to recover $9,385,163 in documented losses (plus ongoing losses accruing at an accelerating rate), obtain a full accounting of ESI's claim adjudication, secure a declaration of the parties' rights, and compel ESI to administer reimbursement consistent with its contractual and legal obligations. The viability of Plaintiffs as independent specialty pharmacies, and the

continued access of their patients to critical infusion therapies, depends on the resolution of this dispute.

**PARTIES**

5. Plaintiff InfuCare Rx, Inc. is a corporation organized under the laws of the State of New Jersey, with its principal place of business at 695 U.S. Highway 46, Suite 100, Fairfield, New Jersey 07004. InfuCare Rx, Inc. is the parent entity of each pharmacy subsidiary named as a Plaintiff herein. InfuCare Rx, Inc. is one of the nation's largest privately held independent providers of specialty infusion therapy, operating ACHC- and/or URAC-accredited specialty pharmacies across multiple states and delivering high-touch clinical care to patients with complex, chronic, and rare medical conditions.

6. Plaintiff InfuCare Rx LLC is a limited liability company organized under the laws of the State of Pennsylvania. Its sole member is InfuCare Rx, Inc., a New Jersey corporation. InfuCare Rx LLC is a specialty pharmacy operating under NCPDP numbers 6002884 and 1088055 and is a party to Provider Agreements NCM1082598 (eff. January 8, 2024) and NCM11611707 (eff. September 12, 2024).

7. Plaintiff DM Clinical Collaborations is a corporation organized under the laws of the State of California, with its principal place of business at 6108 San Fernando Road, Glendale, California 91201. DM Clinical Collaborations is a specialty pharmacy operating under NCPDP number 5651458 and is a party to Provider Agreement NCM1082640 (eff. January 8, 2024).

8. Plaintiff HomeCare Rx, Inc. is a corporation organized under the laws of the State of New Jersey, with its principal place of business at 45 Route 46, Pine Brook, New Jersey 07058. HomeCare Rx, Inc. is a specialty pharmacy operating under NCPDP number 3149677 and is a party to Provider Agreement NCM1082633 (eff. January 8, 2024).

9. Plaintiff Factor One Source Pharmacy LLC is a limited liability company organized under the laws of the State of Maryland. Its sole member is InfuCare Rx, Inc., a New Jersey corporation. Factor One Source Pharmacy LLC is a specialty pharmacy operating under NCPDP number 2138293 and is a party to Provider Agreement NCM1018919 (eff. December 28, 2023).

10. Plaintiff Fast Access Specialty Therapeutics, LLC is a limited liability company organized under the laws of the State of Louisiana. Its sole member is Factor One Source Pharmacy LLC, a Maryland limited liability company whose sole member is InfuCare Rx, Inc., a New Jersey corporation. Fast Access Specialty Therapeutics, LLC is a specialty pharmacy operating under NCPDP numbers 5916967 and 1934771 and is a party to Provider Agreements NCM1082637 (eff. January 8, 2024) and NCM1082635 (eff. January 5, 2024).

11. Defendant Express Scripts, Inc. ("ESI") is a corporation organized under the laws of the State of Delaware, with its principal place of business at 1 Express Way, St. Louis, Missouri 63121. ESI is a pharmacy benefit manager that administers and manages Prescription Drug Programs for plan sponsors and their members, maintains networks of participating pharmacies, and adjudicates pharmacy claims. ESI conducts business throughout the United States, including in this judicial district.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a). Complete diversity exists between Plaintiffs (citizens of New Jersey, Pennsylvania, Maryland, Louisiana, and California) and Defendant ESI (a citizen of Delaware and Missouri). The amount in controversy exceeds $75,000, exclusive of interest and costs.

13. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (2). In addition, each of the governing Provider Agreements contains an exclusive forum selection clause designating this Court as the mandatory forum. Specifically, § 7.12.b of each Agreement provides: "All litigation between the parties arising out of or related in any way to the interpretation or performance of the Agreement shall be litigated in the U.S. District Court for the Eastern District of Missouri, or, as to those lawsuits to which the Federal Court lacks jurisdiction, before a court located in St. Louis County, Missouri."

## FACTUAL BACKGROUND

### A. The Parties and the Governing Agreements

14. Plaintiffs participate in ESI's pharmacy networks under a series of written Provider Agreements (collectively, the "Agreements") entered into beginning in 2019 and running through the present.[1] Pursuant to the Agreements, Plaintiffs agreed to dispense Covered Medications to ESI plan members in exchange for reimbursement administered by ESI. The Agreements include:

a. Provider Agreements NCM714535 (effective June 28, 2021) and NCM1082598 (effective January 8, 2024), between ESI and InfuCare Rx LLC (NCPDP 6002884) (**Exhibit 1A**);

b. Provider Agreements NCM521706 (effective April 12, 2019) and NCM1082637 (effective January 8, 2024), between ESI and Fast Access Specialty Therapeutics (NCPDP 5916967) (**Exhibit 1B**);

---

[1] Each Plaintiff pharmacy executed a Provider Agreement between 2019-2021 with ESI. In 2023-2024, each Plaintiff pharmacy executed a materially similar Provider Agreement with ESI that replaced each earlier Provider Agreement. For ease of reference, only the 2023-2024 Provider Agreements between each Plaintiff pharmacy and ESI are attached here as **Exhibit 1.**

c. Provider Agreements NCM714569 (effective June 28, 2021) and NCM1082640 (effective January 8, 2024), between ESI and DM Clinical Collaborations (NCPDP 5651458) (**Exhibit 1C**);

d. Provider Agreements NCM714760 (effective July 27, 2021) and NCM1082633 (effective January 8, 2024), between ESI and HomeCare Rx, Inc. (NCPDP 3149677) (**Exhibit 1D**);

e. Provider Agreements NCM728341 (effective August 4, 2021) and NCM1082635 (effective January 5, 2024), between ESI and Fast Access Specialty Therapeutics, LLC (NCPDP 1934771) (**Exhibit 1E**);

f. Provider Agreements NCM550498 (effective November 1, 2019) and NCM1018919 (effective December 28, 2023), between ESI and Factor One Source Pharmacy LLC (NCPDP 2138293) (**Exhibit 1F**); and

g. Provider Agreement NCM11611707, between ESI and InfuCare Rx LLC (NCPDP 1088055), effective September 12, 2024 (**Exhibit 1G**).

15. Each Provider Agreement is supplemented by associated rate exhibits and network participation agreements, including ES1000 Provider Reimbursement Agreements, Home Infusion Therapy Medicare Part D Agreements, Vaccine Administration Network Agreements, a ClearNetwork Agreement, and Federal Network/DODA exhibits. Each of these exhibits and network participation agreements is expressly subject to the terms and conditions of its respective Provider Agreement (collectively, with the Provider Agreements, the "Agreements").

16. Under the Agreements, Plaintiffs are entitled to receive reimbursement for each Covered Medication dispensed, equal to the lowest of: (a) the Provider's Usual and Customary

Retail Price; (b) not less than the applicable AWP discount plus applicable dispensing fee; (c) the Provider's submitted ingredient cost plus applicable dispensing fee; (d) an ESI MAC (if applicable) plus applicable dispensing fee; or (e) any applicable state or federal fee schedule. ESI controls the pricing benchmarks—including AWP references, MAC values, and Acquisition Cost indices—used in calculating reimbursement, and administers claim adjudication through its own proprietary systems.

17. The Agreements are governed by Missouri law. Each Agreement (except NCM1018919) contains a New York law carve-out applicable solely to services rendered in New York to members of Article 44-certified MCO plan sponsors. The December 28, 2023 Agreement (NCM1018919) is governed by Missouri law with no such carve-out.

18. Each Agreement also expressly requires ESI to maintain reimbursement rate schedules. Section 2.3 of Provider Agreement NCM11611707 obligates ESI to maintain applicable reimbursement rate schedules. ESI's obligation to do so is ongoing and non-discretionary.

**B. ESI's Systematic Below-Cost Reimbursement Scheme**

19. The specialty medications Plaintiffs dispense to ESI members are predominantly brand-name biologic and infusion therapies that require specialized clinical expertise, cold-chain logistics, rigorous patient monitoring, and ongoing clinical coordination. Some examples include treatments for rare blood disorders, autoimmune diseases, and neurological conditions. These drugs carry high wholesale acquisition costs and require substantial operational infrastructure to dispense safely and effectively. Obtaining, handling, and supporting these medications imposes documented costs on Plaintiffs that far exceed the costs of conventional retail pharmacy operations. The patients who depend on these medications have few or no alternative access

points, and neither do ESI's plan sponsors, who rely on pharmacies like Plaintiffs to ensure their members can access these critical therapies.

20. ESI's current reimbursement methodology for brand-name specialty drugs ranges from AWP minus 20.25% to AWP minus 27.80%. Across a significant and growing portion of the specialty medications Plaintiffs dispense to ESI members, these rates yield reimbursement that falls below Plaintiffs' actual wholesale acquisition cost ("WAC"). Plaintiffs thus incur a net loss on virtually every high-volume specialty prescription filled for ESI members.

21. ESI's rates for Plaintiffs are materially worse than those offered by other major PBMs with which Plaintiffs contract, confirming that the below-cost reimbursement reflects ESI's deliberate pricing choices and not market conditions.

22. ESI's reliance on Accredo, a specialty pharmacy wholly owned by ESI that dispenses the same medications at issue in this action to the same ESI plan member populations that Plaintiffs serve, further demonstrates that ESI's reimbursement does not reflect market conditions.

23. Accredo is Plaintiffs' direct competitor within ESI's own network. On information and belief, unlike Plaintiffs, Accredo does not need to generate a positive margin on the reimbursement rates ESI publishes to its independent network pharmacies.

24. On information and belief, Accredo benefits from preferential drug acquisition arrangements negotiated at the enterprise level, drawing on ESI's full purchasing power and manufacturer relationships, giving Accredo access to acquisition costs materially below what independent specialty pharmacies can access through commercially available channels. Upon information and belief, ESI has not offered Plaintiffs, and does not offer any independent network pharmacy, access to comparable acquisition pricing. The same published reimbursement

rate that preserves a margin for Accredo destroys any margin for Plaintiffs filling the identical prescription for the identical ESI member.

25. On information and belief, because ESI and Accredo share the same corporate parent, rebate revenue retained at the ESI PBM level offsets any dispensing loss recorded at the Accredo subsidiary level within the same consolidated enterprise. Plaintiffs have no equivalent offset: when ESI reimburses Plaintiffs below their actual acquisition cost, that loss is borne entirely by Plaintiffs.

26. Plaintiffs have sustained cumulative net losses of $9,385,163 from 2023 through 2025, directly attributable to ESI's below-cost reimbursement. The annual loss amounts are as follows: 2023: $1,745,265; 2024: $1,799,636; 2025: $5,840,262. These losses continue to accrue in 2026 at an accelerating rate.

27. As an illustrative example, in 2024, Plaintiffs dispensed 1,770 units of Ultomiris, incurring $3,484,070 in acquisition cost and $209,044 in overhead, for total costs of $3,693,114. ESI only reimbursed $3,372,410 at AWP minus 19.5%, resulting in a net loss on that single drug of over $320,000.

28. By way of further example, in 2023, Plaintiffs dispensed 1,179 units of Humira at a total cost of $4,730,716. ESI only reimbursed $3,778,962 at AWP minus 43.6%, resulting in a net loss of nearly $1,000,000 on that drug alone in a single year.

29. ESI's conduct is corroborated by the independent findings of the Federal Trade Commission. In its July 2024 Interim Staff Report on Pharmacy Benefit Managers, the FTC found that PBMs' vertically integrated specialty pharmacies systematically retained dispensing revenue far above estimated acquisition costs, while independent specialty pharmacies were squeezed through below-cost reimbursement—the precise dynamic Plaintiffs allege here. In

February 2026, the FTC entered into a consent order with ESI addressing certain of these anticompetitive practices. ESI's reimbursement of Plaintiffs at below-WAC rates is demonstrative of a dominant PBM exploiting its affiliated pharmacy relationship at the expense of independent competitors.

30. ESI's control over pharmacy reimbursement rates is further corroborated by allegations recently brought by the Florida Attorney General against ESI and Prime Therapeutics LLC, another major PBM. In that action, the Florida Attorney General alleges that ESI and Prime entered into a nationwide arrangement through which Prime aligned the reimbursement rates it paid pharmacies with ESI's lower rates, and that ESI enforced that alignment through pricing "guardrails," "minimums," "maximums," and "targets," periodic reports monitoring Prime's compliance, and year-end financial true-ups. The Florida Attorney General further alleges that the arrangement increased ESI's bargaining leverage over pharmacies and enabled still lower pharmacy reimbursement rates. These allegations are consistent with Plaintiffs' experience that ESI exercises substantial control over the reimbursement rates paid to network pharmacies and deliberately uses that control to drive pharmacy reimbursement downward.

31. When Plaintiffs' counsel raised these documented losses in early 2026, ESI's business representative, Heather Kelly, responded that nothing could be done because the affected specialty medications could simply be dispensed through Accredo, ESI's own affiliated specialty pharmacy and Plaintiffs' direct competitor. In saying so, ESI acknowledged that it is using its ownership of a competing pharmacy as the justification for denying commercially reasonable reimbursement to independent pharmacies that ESI has contracted to serve. This is a deliberate breach of the Agreements, a violation of the implied covenant of good faith and fair dealing, and precisely the anticompetitive favoritism the FTC has condemned.

### C. Pre-Suit Dispute Resolution

27. Prior to filing this action, Plaintiffs fulfilled the pre-suit dispute resolution requirements of § 7.12 of the Agreements. Section 7.12 requires the aggrieved party to notify the other party of its claims and the parties to "meet and confer in good faith to resolve any Claims that may arise under this Agreement for a period of not less than thirty (30) days" before proceeding to litigation.

28. On February 11, 2026, InfuCare Rx, Inc. sent a written letter to Heather Kelly at ESI (the "February Letter"), documenting the below-cost reimbursement practices, presenting detailed claim-level loss data for fifteen representative specialty medications for the period 2023-2025, and requesting prompt engagement to resolve the matter.

29. ESI's response, delivered by Ms. Kelly, was substantively that nothing could be done because the affected medications could be dispensed through Accredo. ESI did not offer any remediation, rate adjustment, or meaningful engagement with the documented financial harm.

30. On or around March 3, 2026, representatives of the parties held a call. ESI's representatives claimed to lack actual authority to negotiate or commit to any resolution on ESI's behalf.

31. On March 12, 2026, Plaintiffs sent a formal demand letter to ESI (the "Demand Letter"), identifying the governing Agreements by contract number, demanding full reimbursement of $9,385,163 in documented losses, requesting immediate implementation of interim rate relief, and calling for negotiation of a commercially reasonable rate agreement by April 12, 2026.

32. On April 1, 2026, ESI wrote to Plaintiffs stating it had "been performing internal due diligence to review InfuCare RX's current rates" and characterizing the dispute as subject to ongoing business-to-business discussions. ESI made no commitment to rate relief, repayment, or any other remedy.

33. On April 7, 2026, Plaintiffs responded to ESI via additional correspondence, rejecting the characterization of the matter as a routine business dialogue, and demanding that ESI confirm that it would take certain specified remedial actions by April 15, 2026.

34. To date, ESI has failed to provide commercially reasonable rate reimbursement, has refused to repay Plaintiffs' documented losses, and has otherwise failed to remediate the ongoing contractual breaches.

35. The minimum 30-day good-faith discussion period required by § 7.12 of the Agreements has been completed and exceeded. ESI's participation throughout was performative: it put forth representatives without decision-making authority, offered no rate relief, proposed no repayment of documented losses, and declined to commit to any remediation. Having exhausted the required pre-suit process without any meaningful response from ESI, Plaintiffs are entitled to proceed to litigation.

**COUNT I**
**Breach of Contract**

36. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

37. To establish a breach of contract claim under Missouri law, a plaintiff must show: (1) the existence of a contract; (2) the rights and obligations imposed by the contract; (3) a breach; and (4) damages resulting therefrom.

38. The Agreements constitute valid, binding contracts between each Plaintiff-pharmacy and ESI, supported by adequate consideration: Plaintiffs' agreement to participate in ESI's networks and dispense medications to ESI members in exchange for ESI's obligation to administer reimbursement in accordance with the contractual pricing methodologies.

39. Plaintiffs have fully performed their obligations under the Agreements, including by timely dispensing Covered Medications to eligible ESI plan members in accordance with the Agreements.

40. ESI has materially breached the Agreements in the following respects:

a. ESI applied pricing benchmarks, AWP discounts, MAC values, and reimbursement methodologies inconsistent with the reimbursement structures prescribed by the Agreements and the applicable rate exhibits, resulting in reimbursement below the contractually mandated amounts;

b. ESI failed to maintain reimbursement rate schedules as required by the Agreements, including as required by § 2.3 of Provider Agreement NCM11611707;

c. ESI applied improper, outdated, or incorrect pricing inputs and benchmark data in adjudicating Plaintiffs' claims, resulting in systematic underpayment inconsistent with the contractual reimbursement framework; and

d. ESI failed to engage in genuine good-faith negotiations as required by § 7.12 of the Agreements, providing representatives without decision-making authority, characterizing Plaintiffs' substantive claims as ordinary business matters, and refusing to commit to any remediation.

41. As a direct and proximate result of ESI's breaches, Plaintiffs have sustained damages of no less than $9,385,163 for the period 2023 through 2025, plus additional amounts accruing in 2026 and thereafter, in an exact amount to be proven at trial.

**COUNT II**
**Breach of the Implied Covenant of Good Faith and Fair Dealing**

42. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

43. Under Missouri law, a duty of good faith and fair dealing is implied in every contract. A breach of this implied covenant occurs when a party exercises a judgment conferred by the express terms of the agreement in a manner that evades the spirit of the transaction or denies the other party the expected benefit of the contract.

44. The Agreements vest ESI with a certain level of discretionary authority, including the authority to: (a) determine and update pricing benchmarks, including AWP reference values, MAC pricing, and Acquisition Cost indices; (b) design and administer the adjudication systems through which claims are processed; (c) configure Sponsor-specific network participation and reimbursement programs; and (d) structure ESI's pharmacy network, including by directing members to particular pharmacies within the network. However, that discretion is not unlimited, and the implied covenant of good faith and fair dealing prohibits ESI from exercising it in a manner designed to benefit its own affiliated pharmacy at Plaintiffs' expense.

45. ESI exercised that discretionary authority arbitrarily, capriciously, and in bad faith in a manner designed to deprive Plaintiffs of the commercially reasonable reimbursement that is the fundamental purpose of their participation in ESI's networks, while preserving favorable economics for Accredo, ESI's vertically integrated affiliate.

46. Specifically, ESI exercised its discretionary control to: (a) apply pricing inputs and benchmarks in a manner that resulted in below-WAC reimbursement for a substantial and growing share of Plaintiffs' prescriptions; (b) use outdated or incorrect benchmark data to increase the effective discount imposed on Plaintiffs' claims; (c) steer member volume to Accredo by maintaining below-cost reimbursement rates for independent pharmacies while declining to offer equivalent rates to Plaintiffs; and (d) refuse to engage meaningfully with Plaintiffs' documented financial harm.

47. ESI's conduct denied Plaintiffs the commercially reasonable reimbursement that was the expected benefit of the Agreements and evaded the spirit of the parties' bargain.

48. As a direct and proximate result of ESI's breach of the implied covenant of good faith and fair dealing, Plaintiffs have sustained damages of no less than $9,385,163 for the period 2023 through 2025, plus additional amounts accruing in 2026 and thereafter, in an exact amount to be proven at trial.

**COUNT III**
**Unjust Enrichment (In the Alternative to Contract Claims)**

49. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein. This claim is pleaded in the alternative to Plaintiffs' contract claims.

50. To establish unjust enrichment, a plaintiff must prove: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant appreciated the benefit; and (3) the defendant accepted and retained the benefit under inequitable and/or unjust circumstances.

51. Plaintiffs conferred a substantial benefit on ESI by dispensing high-cost specialty medications to ESI's plan members, thereby enabling ESI to fulfill its obligations to its plan

sponsors, maintain network adequacy, and generate administrative fees and other economic benefits from those prescription drug programs.

52. ESI appreciated this benefit. ESI's plan sponsors paid premiums and administrative fees to ESI in part based on ESI's ability to provide a functional specialty pharmacy network; Plaintiffs' participation in that network was integral to its adequacy.

53. ESI accepted and retained this benefit under inequitable and unjust circumstances. ESI reimbursed Plaintiffs at rates below Plaintiffs' actual acquisition costs, thereby shifting the cost of ESI's benefit administration onto Plaintiffs. The difference between the commercially reasonable reimbursement ESI should have paid and the below-cost amounts ESI actually paid represents value ESI retained at Plaintiffs' expense.

54. Equity cannot permit ESI to retain this benefit. Plaintiffs are entitled to recover amounts by which ESI was unjustly enriched, in an amount to be proven at trial.

**COUNT IV**
**Money Had and Received**

55. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

56. To establish a claim for money had and received, a plaintiff must show: (1) the defendant received or obtained possession of the plaintiff's money; (2) the defendant thereby appreciated a benefit; and (3) the defendant's acceptance and retention of the money was unjust.

57. ESI received from plan sponsors funds that, as between ESI and Plaintiffs, belong in part to Plaintiffs as reimbursement for specialty medications Plaintiffs dispensed to ESI's members. ESI controlled the flow of those funds through its adjudication systems and retained amounts in excess of those it paid to Plaintiffs.

58. ESI appreciated the benefit of retaining these amounts, which reduced ESI's administrative expenditures and increased its spread and margin on the dispensing activity of independent pharmacies in its network.

59. ESI's acceptance and retention of the difference between the commercially reasonable reimbursement owed to Plaintiffs and the below-cost amounts ESI paid is unjust and contrary to good conscience.

60. Equity and good conscience will not permit ESI to retain money that rightfully belongs to Plaintiffs. Plaintiffs are entitled to recover those amounts in a sum to be proven at trial.

**COUNT V**
**Accounting**

61. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

62. ESI has exclusive control over the adjudication systems, pricing benchmark data, MAC values, internal pricing decisions, and claim-level records that determined what Plaintiffs were paid on each prescription dispensed to ESI members. Plaintiffs have access only to the remittance outputs ESI generated; they do not have access to the underlying inputs, algorithms, or adjudication records ESI used to calculate those amounts.

63. Without a detailed, claim-level accounting of ESI's adjudication practices, Plaintiffs are unable to independently verify the full extent of ESI's underpayments or calculate the precise damages owed on a claim-by-claim basis.

64. Plaintiffs have no adequate remedy at law sufficient to compel disclosure of this information absent a court-ordered accounting.

65. Plaintiffs are entitled to a full accounting of: (a) all claims submitted by each Plaintiff under the Agreements during the relevant period; (b) the AWP values, MAC values, Acquisition Cost indices, and other pricing benchmarks applied by ESI to each claim at adjudication; (c) the reimbursement amount ESI actually paid on each claim; (d) the reimbursement amount ESI was required to pay under the contractual methodology; and (e) the resulting underpayment, if any, on each claim.

**COUNT VI**
**Action on Account**

66. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

67. The elements of an action on account are: (1) the defendant requested the plaintiff to furnish merchandise or services; (2) the plaintiff accepted the defendant's offer by furnishing those merchandise or services; and (3) the charges were reasonable.

68. ESI, through the Agreements and its administration of prescription drug programs, requested that Plaintiffs furnish specialty medications and related pharmacy services to ESI plan members.

69. Plaintiffs accepted ESI's request by dispensing the requested medications and services to eligible ESI plan members, as documented in the claims Plaintiffs submitted to ESI pursuant to the Agreements.

70. The charges Plaintiffs submitted for those medications and services were reasonable, consistent with or below Plaintiffs' usual and customary retail prices, and in many cases below Plaintiffs' actual acquisition costs.

71. ESI has failed to pay the full amounts due on Plaintiffs' submitted claims. The resulting unpaid balance is no less than $9,385,163, together with amounts accruing in 2026 and thereafter, in an exact amount to be proven at trial.

**COUNT VII**
**Account Stated**

72. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

73. To establish an account stated under Missouri law, a plaintiff must prove: (1) the parties had prior financial dealings giving rise to an open account; (2) the parties reached an agreement as to the amount due and owing on that account; and (3) the debtor acknowledged the obligation and made an unconditional promise to pay.

74. The parties have an open account arising from their continuous course of dealing under the Agreements, pursuant to which Plaintiffs submitted claims over several years, ESI issued remittance advices, and amounts were paid and disputed over time in accordance with the contractual remittance and objection framework.

75. Through the parties' course of dealing, including Plaintiffs' written notices of underpayment in the February Letter (February 11, 2026) and the Demand Letter (March 12, 2026), and ESI's acknowledgment of those claims through subsequent communications, the parties have reached an acknowledgment regarding the existence of the amounts at issue.

76. ESI's April 1, 2026 correspondence acknowledged the parties' disputes and ESI's ongoing internal review of Plaintiffs' reimbursement rates. ESI's representations that it was reviewing Plaintiffs' rates constitute an acknowledgment of the existence of the account and an obligation to resolve the amounts at issue.

77. An account stated has been established in an amount no less than $9,385,163. Plaintiffs are entitled to judgment in that amount, together with interest and costs.

**COUNT VIII**
**Promissory Estoppel**

78. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

79. Plaintiffs plead this Count in the alternative pursuant to Fed. R. Civ. P. 8(d)(3).

80. Under Missouri law, a claim for promissory estoppel requires: (1) a promise; (2) on which a party relies to its detriment; (3) in a way the promisor expected or should have expected; and (4) resulting in an injustice that only enforcement of the promise could cure.

81. Specifically, ESI represented to Plaintiffs that: (a) reimbursement would be administered through defined AWP-based and MAC-based pricing methodologies, applied consistently and using current, accurate benchmark data; (b) Plaintiffs' participation in ESI's networks would generate economically viable reimbursement sufficient to sustain their operations; and (c) ESI would engage in good-faith negotiations to address any rate inadequacies as they arose.

82. Plaintiffs reasonably and justifiably relied on these representations in: (a) agreeing to participate in ESI's pharmacy networks; (b) continuing over multiple years to dispense specialty medications to ESI plan members; and (c) investing significant clinical, operational, and financial resources in support of that patient population.

83. Plaintiffs relied in a manner ESI expected or should have expected. No pharmacy undertakes the clinical and operational commitments required to serve a specialty patient population at scale without a reasonable expectation of economically viable reimbursement, and

certainly would not agree to participate in ESI's networks that financially benefit ESI's own pharmacies over Plaintiffs.

84. Enforcement of ESI's representations is necessary to prevent injustice, given the magnitude of the losses Plaintiffs have sustained and continue to sustain in reliance on those representations.

85. Plaintiffs have been damaged in an amount to be proven at trial.

**COUNT IX**
**Declaratory Judgment**

86. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

87. An actual and justiciable controversy exists between Plaintiffs and ESI with respect to: (a) ESI's obligations under the Agreements to administer reimbursement at commercially reasonable rates in accordance with the contractual pricing methodologies; (b) whether ESI has breached those obligations; (c) the correct methodology for calculating reimbursement for each category of Covered Medication; (d) whether ESI may use the availability of Accredo as justification for denying commercially reasonable reimbursement to Plaintiffs; and (e) Plaintiffs' entitlement to continued participation in ESI's networks on commercially viable terms.

88. Pursuant to 28 U.S.C. § 2201, Rule 57 of the Federal Rules of Civil Procedure, and Mo. Rev. Stat. § 527.010 et seq., Plaintiffs seek a declaration from this Court as follows:

a. ESI is obligated under the Agreements to administer reimbursement in accordance with the contractual pricing methodologies applied accurately, consistently, and using current benchmark data;

b. ESI's application of below-cost reimbursement rates, to the extent not authorized by the contractual pricing mechanics accurately applied, constitutes a breach of the Agreements;

c. ESI is not contractually or legally authorized to use the availability of its affiliated pharmacy Accredo as a basis for denying commercially reasonable reimbursement to Plaintiffs; and

d. Plaintiffs are entitled to commercially reasonable reimbursement for medications dispensed to ESI plan members consistent with the contractual pricing framework.

89. A declaration will resolve the existing controversy, clarify the parties' respective rights and obligations going forward, and prevent the continuation of the ongoing harm to Plaintiffs.

**NEW YORK CARVE-OUT CLAIMS: PREFATORY STATEMENT**

90. Counts X through XIV are brought pursuant to New York law solely with respect to the claims arising from Plaintiffs' services rendered in the State of New York to members of Article 44-certified managed care organization plan sponsors (the "New York Carve-Out Claims"). As set forth in Paragraph 17 above, each Provider Agreement except NCM1018919 contains a choice-of-law provision designating New York law as governing services rendered in New York to members of Article 44-certified MCO plan sponsors (the "New York Carve-Out Agreements"). These counts are pled in the alternative and as supplements to the Missouri law claims set forth in Counts I through IX above, to the extent those claims encompass the New York Carve-Out Claims. Plaintiffs expressly preserve all rights to have the New York Carve-Out Claims adjudicated under New York law pursuant to the applicable choice-of-law provisions.

**COUNT X**
**Breach of Contract (New York Carve-Out Claims)**

91. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

92. This Count is brought exclusively with respect to the New York Carve-Out Claims under the New York Carve-Out Agreements and is governed by New York law.

93. The New York Carve-Out Agreements constitute valid, binding contracts between each Plaintiff-pharmacy party thereto and ESI, enforceable under New York law. Plaintiffs performed all material obligations required of them under those Agreements, including dispensing covered specialty medications to ESI plan members enrolled in Article 44-certified MCO plans in New York.

94. Pursuant to the New York Carve-Out Agreements, ESI was obligated to administer reimbursement for the New York Carve-Out Claims in accordance with the contractual pricing methodologies, including the AWP-based formulas, MAC pricing, and "lesser of" constructs set forth in the applicable rate exhibits, applied accurately and using current benchmark data.

95. ESI materially breached the New York Carve-Out Agreements by: (a) reimbursing Plaintiffs for the New York Carve-Out Claims at rates below Plaintiffs' actual wholesale acquisition costs for dispensed specialty medications; (b) applying improper pricing benchmarks, outdated AWP reference values, and arbitrary MAC prices that do not reflect current market data to the adjudication of New York Carve-Out Claims; and (c) failing to maintain accurate and current reimbursement rate schedules as required by the Agreements.

96. ESI's breaches have directly and proximately caused Plaintiffs to suffer substantial damages in an amount to be proven at trial.

**COUNT XI**
**Breach of Implied Covenant of Good Faith and Fair Dealing (New York Carve-Out Claims)**

97. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

98. This Count is brought exclusively with respect to the New York Carve-Out Claims and is governed by New York law. This Count is not duplicative of Count X; it addresses ESI's exercise of broad contractual discretion in a manner that frustrated Plaintiffs' reasonable expectations and denied Plaintiffs the benefit of the New York Carve-Out Agreements, without regard to whether any particular express term was directly violated.

99. Under New York law, every contract contains an implied covenant of good faith and fair dealing pursuant to which neither party will act to destroy or injure the right of the other party to receive the fruits of the contract. Where a contract vests one party with discretionary authority, that party must exercise its discretion in good faith and in a manner consistent with the reasonable expectations of the other party. *Id.*

100. The New York Carve-Out Agreements vest ESI with broad discretionary authority with respect to the New York Carve-Out Claims, including authority to: (a) determine and update pricing benchmarks applicable to New York Carve-Out Claims; (b) design and administer the adjudication systems through which New York Carve-Out Claims are processed; and (c) configure sponsor-specific network and reimbursement programs applicable to Article 44-certified MCO plan sponsors.

101. ESI exercised this discretionary authority in bad faith and in a manner that frustrated Plaintiffs' reasonable expectations by: (a) manipulating pricing benchmarks and MAC values applicable to New York Carve-Out Claims to produce systematic below-cost

reimbursement to Plaintiffs; (b) selectively applying unfavorable adjudication parameters to Plaintiffs' claims; (c) invoking the availability of Accredo as a pretext for refusing to engage with Plaintiffs' documented losses on New York Carve-Out Claims; and (d) withholding from Plaintiffs material information concerning the benchmarks, methodologies, and internal adjudication parameters governing New York Carve-Out Claims, preventing Plaintiffs from identifying or challenging below-cost reimbursement.

102. New York Public Health Law § 280-a imposes obligations of good faith, fair dealing, and transparency on pharmacy benefit managers operating in New York. ESI's conduct in administering the New York Carve-Out Claims is inconsistent with those statutory obligations and violates the implied covenant embedded in the New York Carve-Out Agreements.

103. ESI's bad faith exercise of contractual discretion has directly and proximately caused Plaintiffs to suffer substantial damages in an amount to be proven at trial.

**COUNT XII**
**Unjust Enrichment (New York Carve-Out Claims, in the alternative to Contract Claims)**

104. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

105. This Count is brought exclusively with respect to the New York Carve-Out Claims, is governed by New York law, and is pled in the alternative to the contract claims in Counts X and XI to the extent required by applicable pleading standards.

106. Under New York law, a claim for unjust enrichment requires: (1) the defendant was enriched; (2) at the plaintiff's expense; and (3) circumstances are such that in equity and good conscience the defendant should not retain what plaintiff seeks to recover.

107. Plaintiffs conferred a direct and substantial benefit on ESI by dispensing high-cost specialty medications to ESI plan members enrolled in Article 44-certified MCO plans in New

York, enabling ESI to fulfill its obligations to those plan sponsors, maintain network adequacy in New York, and generate administrative fees and other economic benefits attributable to those members' prescription drug programs.

108. ESI received and retained funds from Article 44-certified MCO plan sponsors that, as between ESI and Plaintiffs, belong in part to Plaintiffs as reimbursement for specialty medications Plaintiffs dispensed to those members in New York. ESI controlled the flow of those funds through its adjudication systems and retained amounts in excess of those it paid to Plaintiffs, keeping the difference between what the plan sponsors paid and the below-cost amounts ESI remitted to Plaintiffs.

109. It is against equity and good conscience to permit ESI to retain the benefit of Plaintiffs' services on the New York Carve-Out Claims without paying commercially reasonable compensation. Plaintiffs are entitled to recover the amounts by which ESI was unjustly enriched in connection with the New York Carve-Out Claims, in an amount to be proven at trial.

**COUNT XIII**
**Promissory Estoppel (New York Carve-Out Claims)**

110. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

111. This Count is brought exclusively with respect to the New York Carve-Out Claims, is governed by New York law, and is pled in the alternative to the contract claims in Counts XI and XII to the extent required by applicable pleading standards.

112. Under New York law, promissory estoppel requires: (1) a sufficiently clear and unambiguous promise; (2) reasonable reliance on that promise; and (3) injury caused by the reliance.

113. ESI, through the New York Carve-Out Agreements, its network communications, and its representations to Plaintiffs, made clear and unambiguous promises that Plaintiff would receive commercially reasonable reimbursement for specialty medications dispensed to ESI plan members enrolled in Article 44-certified MCO plans in New York, calculated in according with the pricing methodologies and benchmarks set forth in the New York Carve-Out Agreements.

114. Plaintiffs reasonably and foreseeably relied on these promises in: (1) agreeing to participate in ESI's pharmacy networks for New York Article 44-certified MCO members; (b) continuing over multiple years to dispense high-cost specialty medications to those members; and (c) investing significant clinical, operational, and financial resources—including cold-chain logistics, specialized clinical staffing, and patient care coordination—necessary to serve that member population and satisfy ESI's network adequacy requirements in New York.

115. ESI's failure to honor its promises with respect to the New York Carve-Out Claims has caused unconscionable injury to Plaintiffs, who dispensed specialty medications to ESI members in reliance on ESI's commitment to commercially reasonable reimbursement and who cannot recover those costs. Plaintiffs have been damaged in an amount to be proven at trial.

**COUNT XIV**
**Declaratory Judgment (New York Carve-Out Claims)**

116. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

117. This Count is brought exclusively with respect to the New York Carve-Out Claims. Plaintiffs seek declaratory relief pursuant to 28 U.S.C. § 2201, Rule 57 of the Federal Rules of Civil Procedure, and N.Y. C.P.L.R. § 3001.

118. An actual, live, justiciable controversy exists between Plaintiffs and ESI regarding their respective rights and obligations under the New York Carve-Out Agreements with respect

to the New York Carve-Out Claims, including the regulatory standards applicable under New York law to ESI's administration of those claims.

119. Pursuant to 28 U.S.C. § 2201 and N.Y. C.P.L.R. § 3001, Plaintiffs seek a declaration from this Court as follows:

e. ESI is obligated under the New York Carve-Out Agreements to administer reimbursement for New York Carve-Out Claims in accordance with the contractual pricing methodologies, applied accurately, consistently, and using current benchmark data;

f. ESI may not use the availability of Accredo or any affiliated pharmacy as a justification for denying commercially reasonable reimbursement to Plaintiffs for New York Carve-Out Claims;

g. New York Public Health Law § 280-a and the New York Carve-Out Agreements require ESI to deal with Plaintiffs in good faith and to disclose, upon request, the benchmark values, MAC methodologies, and adjudication parameters it applies to New York Carve-Out Claims; and

h. Plaintiffs are entitled to commercially reasonable reimbursement for specialty medications dispensed to ESI plan members enrolled in Article 44-certified MCO plans in New York, consistent with the New York Carve-Out Agreements and applicable New York law.

120. A declaration will resolve the existing controversy, clarify the parties' respective rights and obligations under New York law on a going-forward basis, and prevent the continuation of the ongoing harm to Plaintiffs with respect to the New York Carve-Out Claims.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs InfuCare Rx, Inc., InfuCare RX LLC, DM Clinical Collaborations, HomeCare Rx, Inc., Factor One Source Pharmacy LLC, and Fast Access Specialty Therapeutics, LLC respectfully request that this Court enter judgment in their favor and against Defendant Express Scripts, Inc. as follows:

a. Compensatory damages in an amount no less than $9,385,163, representing Plaintiffs' cumulative net losses from 2023 through 2025 attributable to ESI's below-cost reimbursement, plus damages for losses accruing in 2026 and thereafter, in an exact amount to be proven at trial;

b. A full accounting of: (i) all claims submitted by Plaintiffs under the Agreements; (ii) the pricing benchmarks, AWP values, MAC values, and Acquisition Cost indices applied by ESI to each claim at adjudication; (iii) the reimbursement amounts ESI actually paid; (iv) the amounts ESI was contractually required to pay; and (v) the resulting underpayment on each claim;

c. A declaration that: (i) ESI is obligated under the Agreements to administer reimbursement in accordance with the contractual pricing methodologies, applied accurately and using current benchmarks; (ii) ESI may not use the availability of Accredo as a basis for denying commercially reasonable reimbursement to Plaintiffs; and (iii) Plaintiffs are entitled to commercially reasonable reimbursement for specialty medications dispensed to ESI plan members;

d. Restitution and/or disgorgement of amounts by which ESI was unjustly enriched at Plaintiffs' expense;

e. Pre- and post-judgment interest at the maximum rate permitted by law;

f. Attorneys' fees and costs to the extent permitted by the Agreements or applicable law; and

g. Such other and further relief as this Court deems just, equitable, and proper.

## DEMAND FOR JURY TRIAL

A trial by jury is demanded on all issues so triable.

Respectfully submitted,

*/s/ Dmitry Shifrin*

Dmitry Shifrin
dshifrin@polsinelli.com
**POLSINELLI PC**
150 N. Riverside Plaza, Suite 3000
Chicago, Illinois 60606

Stephen Bittinger (*pro hac vice forthcoming)*
sbittinger@polsinelli.com
Mattie Bowden (*pro hac vice forthcoming)*
mbowden@polsinelli.com
**POLSINELLI PC**
177 Meeting St., Suite 400
Charleston, South Carolina 29401

*Counsel for Plaintiffs*